# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

RENEE M. FAIR,     )
           )
  Plaintiff,     )
           )
  v.        )   CAUSE NO.: 1:17-CV-99-TLS
           )
NANCY A. BERRYHILL,   )
ACTING COMMISSIONER OF THE )
SOCIAL SECURITY    )
ADMINISTRATION,    )
           )
  Defendant.    )

## OPINION AND ORDER

Plaintiff Renee M. Fair seeks review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying her application for disability and

disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her

Social Security Disability benefits and erred by failing to give controlling weight to the

Plaintiff's treating pain management specialist's opinion.


## BACKGROUND

On September 24, 2012, the Plaintiff filed a Title II application for a period of disability

and disability insurance benefits, alleging disability beginning on July 30, 2012. (R. 301–03.)

Her claim was denied initially on February 5, 2013 (R. 151–64), and upon reconsideration on

April 4, 2013 (166–78). On March 3, 2014, the Plaintiff appeared with counsel and testified at a

hearing before an administrative law judge. (R. 183.) On May 19, 2014, the ALJ denied the

Plaintiff's application. (R. 192.) On August 8, 2015, the Appeals Council remanded the case

back to the ALJ for further consideration of certain issues. (R. 198–201.) On December 15, 2015,

the Plaintiff again appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (R. 31.) Mario Davila, a vocational expert (VE), also appeared and testified at the hearing. (*Id.*) On February 3, 2015, the ALJ denied the Plaintiff's application, finding she was not disabled as of her alleged onset date. (R. 31–51) On January 17, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–4.)

On March 16, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has engaged in SGA since her alleged onset date, July 30, 2012, but that her work activity did not last six months and was more appropriately categorized as an unsuccessful work attempt, prompting further analysis. (R. 34.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including chronic low back pain due to lumbar spine degenerative disc/lumbar spondylosis/lumbar radiculitis, status post lumbar decompression/fusion surgery; fibromyalgia/fibromyositis/myalgias/myositis; and depression/bipolar disorder and anxiety disorder. (*Id.*) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id.*) The ALJ found that the Plaintiff's other alleged impairments were not severe impairments. (*Id*.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform less than the full range light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The ALJ found that her capacities were further reduced in that:

She can stand/walk, in combination, for four hours during an eight-hour workday, but cannot do so for six hours. As to postural changes, she can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, but can never crawl or climb ladders, ropes, or scaffolds. Otherwise, the claimant can sit for six hours during an eight-hour workday and lift, carry, push and pull up to ten pounds frequently and up to twenty pounds on an occasional basis. With respect to her work environment, she must avoid even moderate exposure to wetness and hazards (i.e. operational control of dangerous moving machinery, unprotected heights, and slippery/uneven/moving surfaces). Regarding her mental residual functional capacity, the claimant cannot perform tasks requiring intense/focused attention for extended periods. To minimize work distractions, the claimant should not work in close proximity to others on more than an occasional basis. She requires work that allows for a flexible pace, i.e., where the employee has some independence in determining either the timing of different work activities or the pace of work. The claimant can interact with the general-public on an occasional basis.

(R. 37.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely credible. The ALJ first noted that the Plaintiff's behavior and demeanor at the hearing were "not consistent with her claims." (R. 38.) The ALJ also noted that the Plaintiff continued to engage in SGA after her alleged onset date and that she reported exercising at levels incompatible with disabling pain. (*Id.*)

The ALJ then turned to the objective medical evidence and the opinions rendered by various medical professionals. The ALJ gave no weight to Dr. James Ingram's opinion, who assessed the Plaintiff at the Plaintiff's request regarding her alleged disability. (R. 42.) The ALJ found Dr. Ingram's objectivity questionable because he completed his report at the Plaintiff's request and in her presence, that he limited the amount of pain killers he prescribed to the

Plaintiff because he did not know her and she did not appear to be in pain, and he referred the Plaintiff to a pain specialist rather than treating her himself. (*Id.*) The ALJ found that the opinion of the Plaintiff's treating pain specialist, Dr. Jeffrey Barr, was not entitled to great weight, but the opinion had "some value to the extent it is consistent with the opinions of [state agency consultants] and the results of the Functional Capacity Evaluation." (R. 44.) The ALJ found Dr. Barr's examination findings to be "generally uninformative" (R. 39), that his treatment records did not support his opinion generally (R. 40), that he "essentially took the claimant's statements at face value" in giving a work recommendation (*Id.*), and that Dr. Barr's recommendations to the Plaintiff generally included increased exercise or other physical activities (R. 39–41, 45). The ALJ found it "bothersome" that in assessing the Plaintiff, "before circling '4' and '2' hours, Dr. Barr had circled and crossed out '5' hours of sitting and '3' hours of standing/walking (Exhibit 24-F)," which would have been "compatible with full-time work." (R. 39, 43.) The ALJ gave significant weight to the state agency consultants' determinations and greater weight to Dr. H.M. Bacchus and the Functional Capacity Evaluation, finding Dr. Bacchus's assessment and the Functional Capacity Evaluation to be consistent. (R. 45.)

The Plaintiff has past relevant work as a licensed practical nurse, a skilled light SVP 6 occupation, and as a cut-off saw operator, a semi-skilled SVP 4 occupation. (R. 49.) Both of these occupations were typically performed and a medium-light exertion level, but the Plaintiff performed them at the medium and heavy exertion levels, respectively. (*Id*.) The VE indicated that the Plaintiff would be unable to perform her past relevant work based on her RFC. (*Id.*) Relying on the VE's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 50.) Thus, the ALJ found that the

Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 51.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ erred by failing to give controlling weight to her treating pain management specialist's opinion.

Generally, controlling weight is given to the treating physician's opinion only if it is well-supported by medically acceptable, objective evidence and consistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is not entitled to controlling weight—such as where it is not supported by the objective medical evidence, is inconsistent with other substantial evidence in the record, or is internally inconsistent, *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995))—the ALJ should proceed with assessing the value of the opinion in the same way he would any other medical evidence. *See id.* Assessing the weight to afford the opinion depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, 20 C.F.R. § 404.1527(c)(2)(i)–(ii), whether the physician

supported his or her opinions with sufficient explanations, *id.* § 404.1527(c)(3), and whether the physician specializes in the medical conditions at issue, *id.* § 404.1527(c)(5). If the ALJ discounts the physician's opinion after considering these factors, that decision stands so long as the ALJ "minimally articulate[d]" his reasons. *Berger*, 516 F.3d at 545 (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)).

It is not the reviewing Court's job to determine whether the treating physician's opinion should have been given controlling weight. *See Clifford*, 227 F.3d at 869 ("[W]e review the entire record, but do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."). However, an ALJ must give "good reasons" for the weight afforded to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). "The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (first citing 20 C.F.R. §§ 404.1527(c)–(d); then citing *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994); and then citing *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993)). A court on review must uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010).

The ALJ spent several pages detailing Dr. Barr's treatment of the Plaintiff, but ultimately found that Dr. Barr's opinion was not entitled to great weight except to the extent it was consistent with the state agency consultants' opinions regarding the Plaintiff's physical restrictions. The ALJ gave several reasons for this conclusion. The Court summarizes the ALJ's reasoning for discounting Dr. Barr's opinion as follows: a medical source statement indicated that Dr. Barr initially marked findings consistent with full time employment; his treatment

records were generally uninformative regarding clinical and diagnostic findings; he encouraged the Plaintiff to exercise; he advised that the Plaintiff should work no more than every other day after the Plaintiff apprised him that she was applying for disability benefits; and in December 2013, Dr. Barr informed the Plaintiff that he was not going to excuse the Plaintiff from work every time she had back pain.[1]

Regarding the ALJ's concern that Dr. Barr advised that the Plaintiff could work only every other day after learning of her disability claim, the Plaintiff should not be penalized for asking her physician for the necessary medical evidence. The Seventh Circuit has previously addressed this issue, holding:

> [T]he fact that relevant evidence has been solicited by the claimant or her representative is not a sufficient justification to belittle or ignore that evidence. *See Moss v. Astrue*, 555 F.3d 556, 560–61 (7th Cir. 2009) (per curiam); *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). Quite the contrary, in fact. The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity. 20 C.F.R. §§ 404.1512(a), (c), 404.1513(a), (b), 404.1545(a)(3). How else can she carry this burden other than by asking her doctor

---

[1] More specifically, on October 8, 2015, the Plaintiff reported that she had been biking on a stationary bicycle upwards of ten miles each day, but Dr. Barr did not advise her to slow down or discontinue her biking. (R. 38.) In June 2015, Dr. Barr completed a medical source statement that indicated that the Plaintiff was able to sit for only four hours and stand/walk for only two hours during an eight-hour workday, but he had previous circled and then crossed out "5" hours of sitting and "3" hours of standing, which would have been compatible with full time employment. (R. 38–39.) The X-rays Dr. Barr reviewed did not indicate any severe disc disease and otherwise did not indicate a back or new condition that would disable the Plaintiff. (R. 39.) The ALJ found that Dr. Barr's examination findings were "generally uninformative as more often times than not his records do not speak to clinical findings such as: straight leg raise; strength testing; sensory and neurological function; or range of motion measurements." (*Id.*) In January 2015, Dr. Barr noted that the Plaintiff had an antalgic gate, but a February examination by an orthopedic surgeon revealed that her gait was normal. (*Id.*) Dr. Barr encouraged exercise and physical therapy in March, May, and July 2015. (R. 39–40.) In January 2014, Dr. Barr recommended that the Plaintiff work only every other day because working two consecutive days placed significant stress on her lumbar region, the day of the Plaintiff's appointment with Dr. Barr was the same day she acknowledged that she had received notice of the date of her disability appeal hearing, and she informed him that she was in the process of filing for disability. (R. 40–41.) In November 2013, the Plaintiff told Dr. Barr that she had returned to work as a nurse and been able to decrease dosages of pain medication. (R. 41.) Finally, when the Plaintiff asked for a work-slip in December 2013 for a few days of missed work, Dr. Barr informed her that he was not going to excuse her from work every time she had back pain going forward. (*Id.*)

> to weigh in? Yet rather than forcing the ALJ to wade through a morass of medical records, why not ask the doctor to lay out in plain language exactly what it is that the claimant's condition prevents her from doing? Indeed the regulations endorse this focused inquiry.

*Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). Consequently, in this case, it was improper for the ALJ to determine that the Plaintiff's request for Dr. Barr's opinion detracted from the reliability of his opinion. For the ALJ to have assigned negative weight to the opinion due to the Plaintiff's request is error.

Additionally, the Court finds that it was error for the ALJ to rely on the fact that Dr. Barr recommended that the Plaintiff exercise and that the Plaintiff complied for at least some period of time as a basis for discounting Dr. Barr's opinion as a treating physician. In analyzing Dr. Barr's opinion, the ALJ mentioned these recommendations several times, but "[i]t is not obvious to the Court how the recommendation that she exercise diminishes Plaintiff's claimed impairments." *Bowles v. Colvin*, No. 3:13-CV-801, 2015 WL 1129173, at *6 (N.D. Ind. Mar. 11, 2015) (citing *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). "One does not need to be utterly incapacitated in order to be disabled." *Carradine*, 360 F.3d at 755 (internal quotation omitted). Such reasoning "fails 'to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days a week.'" *Bowles*, 2015 WL 1129173, at *6 (quoting *Vertigan v. Halter*, 260 F.3d 1044 (9th Cir. 2001)). The Court does not find that a person's ability to use a stationary bike or to do yoga or physical therapy translates into the ability to hold a full time job. Thus, it was error for the ALJ to hold the Plaintiff's recommended exercise against Dr. Barr's opinion.

The Court does not find that the remainder of the reasons the ALJ cited in support of the decision to discount Dr. Barr's opinion to be "good reasons." The ALJ drew no logical bridge to the conclusion that Dr. Barr's apparent reconsideration of the duration of time the Plaintiff can

sit and stand during a workday on the Plaintiff's medical source statement detracts from the credibility of the report. Nowhere else in the record does it appear that Dr. Barr ever recommended that the Plaintiff could sit and stand for those greater periods of time. Nor did the ALJ provide a logical bridge from Dr. Barr's statement that he was not going to excuse the Plaintiff from work every time she had back pain in 2013 to the conclusion that Dr. Barr could not, in his professional opinion, conclude in 2015, after continued treatment and attempts at rehabilitation, that the Plaintiff was unable to work full time.

## CONCLUSION

Accordingly, because the ALJ failed to give good reasons for discounting Dr. Barr's opinion, the Court REVERSES and REMANDS this case.

SO ORDERED on April 17, 2018.

         s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT